*FOR PUBLICATION*

## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. CROIX
### APPELLATE DIVISION

| | |
|---|---|
| VIRGIN ISLANDS CONSERVATION SOCIETY, INC., | )<br>)<br>) D.C. Civ. App. No. 2006/089 |
| PETITIONER, | ) Sup. Ct. Civ. No. 0083/2005<br>) |
| v. | )<br>) |
| VIRGIN ISLANDS BOARD OF LAND USE APPEALS, | )<br>)<br>) |
| RESPONDENT, | )<br>) |
| AND | )<br>) |
| GOLDEN RESORTS, LLP, | )<br>) |
| INTERVENOR. | )<br>) |

On Appeal from the Superior Court of the Virgin Islands

Considered: May 13, 2011
Filed: April 9, 2020

BEFORE: **CURTIS V. GÓMEZ**, Chief Judge[1], District Court of the Virgin Islands; **JUAN R. SANCHEZ**, Judge of the District Court, Eastern District of Pennsylvania, sitting by designation; and **MICHAEL C. DUNSTON**, Judge of the Superior Court of the Virgin Islands, Division of St. Thomas and St. John, sitting by designation.

ATTORNEYS:

**Andrew C. Simpson. Esq.**
St. Croix, U.S.V.I.
    Attorney for Petitioner,

---

[1] At the time this appeal was considered, Judge Curtis V. Gómez was the Chief Judge of the District Court of the Virgin Islands.

**Robert Bernholt, AAG**
St. Croix, U.S.V.I.
    Attorney for Respondent(*deceased*),

**Treston E. Moore, Esq.**
St. Thomas, U.S.V.I.
    Attorney for Intervenor.

## Memorandum Opinion

**Per Curiam.**

In this matter, we are called upon to determine whether the Superior Court of the Virgin Islands erred in affirming the Board of Land Use Appeals' ("BLUA") decision to grant a major coastal zone permit by default.

## I. BACKGROUND

This appeal arises from the Board of Land Use Appeals' issuance of a major coastal zone permit("permit") to Golden Gaming Resorts, LLP ("Golden") for the purpose of developing a hotel, resort and casino on certain wetlands in Estates Hartmann and Great Pond on St. Croix. Because we write for the benefit of the parties, we curtail the lengthy procedurally history of this appeal.

On September 5, 2003, Golden filed its initial application for a major coastal zone permit ("application")[2], with the Virgin

---

[2] In support of its application, Golden submitted an Environmental Assessment Report("EAR") detailing the environmental impact of the development and planned mitigation measures.

Islands Coastal Zone Management Committee ("Committee")[3] of the Virgin Islands Department of Planning and Natural Resources ("DPNR"). A public hearing on the application was held on January 28, 2004.[4] (App. II at 360-489.) A decisional meeting was tentatively scheduled for the first week of February of 2004 to comply with the statutory mandate that the agency act on an application within thirty days of the public hearing.[5] (App. I at 3.) However, the February 2004 meeting never occurred. Instead, on May 26, 2004, over four months after the public hearing, the Committee held its first decisional meeting. At its May 26, 2004,

---

[3] The CZM Committee is the entity organized under the Virgin Islands Department of Parks and Natural resources, vested with administrative oversight over the process of granting the permits required for persons or entities to engage in new developments in the coastal zones of the Virgin Islands. 12 V.I.C. §§ 904 and 910.

[4] The Virgin Islands Conservation Society, Inc. ("VICS") participated in the hearing, voiced its opposition to Golden's application and submitted written comments to the Committee. (App. II at 397.)

[5]
> 4) The appropriate Committee of the Commission shall act upon a major coastal zone permit application **within thirty days** after the conclusion of the public hearing required by paragraph (2) of this subsection, and the Commissioner shall act upon a minor coastal zone permit application within sixty days after receipt thereof. **Failure of the appropriate Committee of the Commission or the Commissioner to act within any time limit specified in this paragraph shall constitute an action taken and shall be deemed an approval of any such application**. A copy of the decision of the appropriate Committee of the Commission or the Commissioner, whichever is applicable, on an application for a coastal zone permit shall be transmitted in writing to the applicant and to any person who requests a copy thereof.

V.I. CODE ANN. tit. 12, § 910(d)(4)(2004)(emphasis added).

meeting, the Committee decided to grant Golden a permit by default by operation of the statute, because, the Committee failed to assemble a quorum within the required thirty-day time frame. *See* V.I. CODE ANN. tit. 12, § 910(d)(4)(2004).[6] Nevertheless, the Committee subsequently held a July 1, 2004 meeting, where it rescinded its May 26th decision to grant Golden a permit by default.

In response, Golden filed a timely administrative appeal with the BLUA challenging the Committee's decision to rescind the permit.[7] On January 12, 2005, BLUA found that the Committee's July 1, 2004, meeting was without effect and that Golden was statutorily entitled to the permit by default. On even date, the BLUA issued Golden a written CZM permit designated as CZX-37-03L. (App. I 34-53.) When the BLUA issued the permit, it placed

---

[6] The CZM Act also provides that, "[a]ny action by the appropriate Committee of the Commission or the Commissioner shall become final after the forty-fifth day following a decision, unless an appeal is filed with the Board of Land Use Appeals within such time. If such an appeal is filed, the operation and effect of the Committee's or the Commissioner's action shall be stayed pending a decision on appeal." 12 V.I.C. § 910(d)(5).

As noted, *supra*, the Act provides that in absence of the Committee's action, within thirty days of the hearing, the application is statutorily deemed approved. 12 V.I.C. § 910(d)(4). Here, the hearing on Golden's permit occurred on January 28, 2004. The thirty-day period when the Committee was required to act accrued on January 29, 2004 and expired on February 28, 2004. The Committee made the affirmative, ministerial decision to grant the permit by default in writing, on May 26, 2004. No appeal was filed with the Board of Land Use Appeals within forty-five days of May 26, 2004.

[7] The BLUA is quasi-judicial DPNR body vested with the Authority to review Committee decisions. *See* 12 V.I.C. § 914; *Virgin Islands Conservation Soc'y v. Virgin Islands Bd. of Land Use Appeals*, 857 F. Supp. 1112, 1115 (D.V.I. 1994).

conditions on it.[8] Those conditions required Golden to implement environmental mitigation and preservation measures.[9]

After the BLUA issued the permit, VICS filed a timely petition for writ of review with the Superior Court of the Virgin Islands challenging the BLUA's decision to issue the permit. The Superior Court rejected VICS' challenge on the merits and affirmed both the BLUA decision and the permit's issuance. *See*

---

[8] The Act empowers the BLUA to impose conditions on permits, where it provides that,

> The Board [BLUA], by majority vote of its authorized members, shall either affirm or reverse the Commission's or its appropriate Committee's or the Commissioner's action and shall either approve or deny an application for a coastal zone permit. <u>If the Board grants an application for a coastal zone permit, the Board shall impose such reasonable terms and conditions on such permit as it deems necessary to achieve the objectives and purposes of this chapter</u>. The Board shall set forth in writing and in detail the reasons for its decision and findings of fact upon which its decision is based.

12 V.I.C. § 914 (d)(emphasis added).

[9] The BLUA-imposed conditions on Golden's permit include requiring that the proposed development: assure "optimum public access" to the shoreline; restrict development and construction to below the high water mark; develop adequate public parking; restrict the removal of sand beyond the vegetation line and comply with DPNR standards concerning the disposal of tertiary sewage treatment. (App. I at 48-49; January 12, 2005, Coastal Zone Permit No. CZX-37-03L, App. I at 4-5.) Golden was also required to: install and construct a reverse osmosis desalination plant; acquire a water quality certificate that encompasses the entire project; monitor sedimentation and erosion control devises throughout the day during major rainfall events; ensure post-construction marine water quality and sedimentation; provide wind load and structural calculation data; utilize a sound-dampening process to dampen noise from pile-driving; implement turtle lighting and a turtle protection program; educate hotel guests on water use; implement oil-spill reduction plan; and other specific and general conditions. (*Id.* at 50-53; *Id.* at 6-9.)

*Virgin Islands Conservation Society, Inc. v. Board of Land Use Appeals*, Docket No. 83/2005 (V.I. Super. Ct May 25, 2006).[10]

VICS subsequently appealed the Superior Court's decision to this appellate court. *See Virgin Islands Conservation Soc'y, Inc. v. Virgin Islands Bd. of Land Use Appeals, et al.*, 49 V.I. 581, 601 (D.V.I. App. Div. 2007). We affirmed the Superior Court's interpretation of the CZM Act, but held that because the BLUA issued the permit purely by operation of the statutory default clause, the absence of Committee fact-finding made the record incomplete. *See id*. On December 6, 2007, we remanded to the Superior Court with instructions to remand to the CZM Committee for appropriate fact-finding.

On January 25, 2009, the Committee acting in accordance with our remand order adopted a May 26, 2004, Committee staff report as the Committee's formal, post-remand factual findings. (*See* May 26, 2004, CZM Committee Report at 5.) That report, which was compiled before the permit was issued, substantively evaluated Golden's application based on several criteria including: zoning requirements; drainage; flooding and erosion control; oceanography and marine life impact; impact on territorial resources including endangered species; archaeology and historic

---

[10] VICS' petition raised several other issues, including the lack of sufficient factual finding concerning the environmental impact of the proposed construction. However, the Superior Court declined to address those issues because they had not been properly raised before BLUA..

preservation; visual impact and impact on public services.[11] Although the BLUA had already issued Golden a permit by default, the Committee concluded that Golden's development was <u>not</u> consistent with the CZM Act and recommended that the permit be denied. Our fact-finding record-remand order having been fulfilled, this matter is currently before us post-remand.

## II. JURISDICTION AND STANDARD OF REVIEW

This Court exercises plenary review over questions of law arising from the Superior Court, including statutory interpretation and jurisdictional issues.[12] *Gov't of the V.I. v. Warner*, 48 F.3d 688, 691 (3d Cir. 1995); *Delta Elec. v. Biggs*, No. 2006-0104, 2011 U.S. Dist. LEXIS 107805, at *6 (D.V.I. App. Div. Sept. 23, 2011). However, we afford the more deferential clear error review to factual determinations. *See Gov't of the*

---

[11] The CZM Committee report also evaluated sub categories of social and economic impact. For example, the "public services" category had several subsets including: traffic; roads/parking; water supply; sewage treatment /disposal; solid waste disposal; hazardous waste disposal; electrical supply; fire; police protection; public health; social impacts; and economic impacts. The Committee evaluated each subset and supported its recommendations by separate analysis, findings and conclusions. (*See* May 26, 2004, CZM Committee Report at 8-12.)

[12] This Court may review the judgments and orders of the Superior Court in civil cases. *See* Revised Organic Act of 1954 § 23A, 48 U.S.C. § 1613a. The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2003), reprinted in V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1); Act 6687 § 4 (2004); Act 6730 § 54 (2005) (amending Act 6687); 4 V.I.C. § 33 (2006).

V.I. v. Albert, 89 F. Supp. 2d 658, 663 (D.V.I. App. Div. 2000).

### III. ISSUE PRESENTED[13]

Whether the Superior Court erred in affirming the BLUA's decision to issue Golden's major coastal zone permit by default.

### IV. ANALYSIS

The permitting process at issue is governed by the Virgin Islands Coastal Zone Management Act, 12 V.I.C. §§ 901-914 ("Act"

---

[13] Notably, in its opening brief, VICS argues that a portion of the property to be developed (Matr. 54) is not properly zoned for Golden's intended purposes. Citing several scenarios, VICS contends that Section 9 of a June 15, 1989 declaration of covenants and restrictions (recorded on March 24, 1995) placed limitations on future development of the property at issue, and the Virgin Islands Legislature's subsequent re-zoning of the property for casino and hotel development under Act 5462 (September 12, 1989) was subject to those covenants. (Appellant's Brief at 7, 21-25; App. I at 70-71.)
 Act 5462 re-zoned the property from A-1 (agricultural) to mixed R-2 (residential low density), R-3 (residential medium density) and W-1 (waterfront pleasure). VICS argues that the covenants were incorporated into Act 5462, and as such, a portion of the property is still zoned A-1 "residential" in perpetuity – despite the Legislature's explicit intent to re-zone it; and as such, that part of the property is not properly zoned for the hotel, casino and convention center that are part of Golden's proposed development.) (Appellant's Brief at 7-11, 23; App. Vol I. at 70.) In turn, Golden cites RESTATEMENT (THIRD) OF PROPERTY § 7.1 and *Saastopankkien Keskus-Osake Pannki v. Allen-Williams Corp.*, 7 F.Supp. 2d. 601, 607 (D.V.I. 1988), to support its argument that: 1) the property was properly re-zoned from A-1 to R-3 by the Legislature in 1989 and 2003; 2) Golden's ownership interest pre-dates and defeats the restrictive covenants, because it purchased the property through a Marshal's deed at a foreclosure sale and the 1988 lien which gave rise to the sale was recorded prior to the recordation of the restrictive covenants. As such, Golden argues that, because a judgment lien is a property interest that runs on the property and is effective to successors in interest, the covenants which attached to the land after the lien was recorded are ineffective against Golden. (Appellee's Brief at 46-49; App. Vol. I at 63-65.)
 After our 2007 remand, the CZM Committee adopted factual findings that concluded that the proposed development met zoning requirements. (*See* May 26, 2004, CZM Committee Report at 8-12.) In fact, it was one of the few areas where both the BLUA and the Committee endorsed Golden's application. *See, e.g., McGonigal v. Barnhart*, 153 Fed. Appx. 60, 62 (3d Cir. 2005)(an appellate tribunal cannot re-weigh an administrative body's evidence)). Moreover, neither the BLUA nor the Superior Court made determinations on these issues. As such, we make no determinations concerning this argument.

or "CZM Act"). The Act was enacted to harmonize the goals of environmental preservation and economic development in the U.S. Virgin Islands. *See* 12 V.I.C. §§ 903(b)(1)-(11); *see also Tamarind Resort Associates v. Gov't of the V.I.*, 138 F.3d 107 (3d Cir. 1998). The Act calls upon the CZM Committee to preserve coastal resources while simultaneously advancing the often competing goal of promoting economic development. *See V.I. Conservation Society v. Board of Land Use Appeals,* 30 V.I. 191, 199 (D.V.I. 1994).

In reviewing the BLUA's decisions, the Superior Court must determine whether the BLUA correctly applied the appropriate standard under the Act. *See V.I. Conservation Soc'y.*, 21 V.I. at 520. The Superior Court was accordingly tasked with determining: (1) whether the agency acted within the limits of its statutory powers;(2) whether the agency applied the relevant law correctly;(3) whether the agency findings are supported by substantial evidence on the record; and(4) whether the agency has abused its discretion by acting in an arbitrary or capricious manner. *Id.; see also* V.I.R and Regs. tit. 12 § 914-3; *Perry v. Gov't Employees Service Commission*, 18 V.I. 524, 527 (D.V.I. 1981). The BLUA's decisions are guided by the terms of the CZM Act; the choice of which standard to apply depends upon the nature of the claim of error. *Virgin Islands Conservation Soc'y*

v. *Virgin Islands Bd. of Land Use Appeals*, 857 F. Supp. 1112, 1115, 1117 (D.V.I. 1994). An agency decision based on an issue of law that does not "implicate[] agency expertise in a meaningful way," is subject to de novo review. *Sandoval v. Reno*, 166 F.3d 225, 239-40 (3d Cir. 1999).

The BLUA issued Golden a permit by default because the CZM Committee failed to form a quorum and timely act on Golden's application for a major coastal zone permit within thirty days of the January 8, 2004 public hearing. The CZM Act provides in pertinent part that,

> The appropriate Committee of the Commission shall act upon a major coastal zone permit application **within thirty days** after the conclusion of the public hearing . . . **Failure of the appropriate Committee of the Commission or the Commissioner to act within any time limit specified in this paragraph shall constitute an action taken and shall be deemed an approval of any such application**. . . .

12 V.I.C. § 910(d)(4)(2004)(emphasis added).[14]

It is uncontroverted that the Committee failed to take timely action on Golden's permit. In line with the CZM Act, the

---

[14] The CZM Commission consists of the Commissioner of the Department of Planning and Natural Resources ("DPNR") and the Director of the Virgin Islands Planning Office, both ex officio members, and fifteen citizen members appointed by the Governor and approved by the Legislature. V.I. CODE ANN. tit. 12, § 904(a). Of the fifteen, five reside in St. Thomas, five in St. John, and five in St. Croix. The five members of each island constitute a Committee of the Commission. *Id.* at § 904(b). In this case, the committee involved was from St. Croix. *See, e.g., Virgin Islands Conservation Soc'y v. Virgin Islands Bd. of Land Use Appeals*, 857 F. Supp. at 1116.

Committee initially issued Golden a permit designated as CZX-37-03L.[15] In contravention of the Act, the Committee later decided to rescind the permit. When Golden filed an administrative challenge to the Committee's decision to rescind the permit; the BLUA, anchored by the plain letter of 12 V.I.C. § 910(d)(4), approved the permit's issuance.

The CZM Act at 12 V.I.C. § 910(d)(4) is unambiguous. It provides a specific consequence for the agency's failure to act within a specific time frame. *Id.* Where the Committee fails to act within thirty days of the public hearing, the Committee's omission is deemed an "action taken" and the permit application is deemed approved by default. *Id.* The parties raise no distinctions nor intervening procedural requirements that serve to break the nexus between approval and issuance. Our exhaustive review of the CZM Act and DPNR rules and regulations further reveals no express or implied waiver or tolling provisions that extend the time within which the Committee must make a decision or otherwise evade permit approval by default.[16] Where applying

---

[15] "A general reading of the CZM Act discloses a legislative intent that permit conditions be reasonable and decisions regarding the granting of permits be made timely." *Water Island Hotel and Beach Club. Ltd. V. Gov't of the Virgin Islands*, 764 F.Supp. 1051 (D.V.I. 1991).

[16] The Virgin Islands CZM Act, unlike similar statutes in other jurisdictions, does not contain any provisions for a waiver or extension of this time period, whether at the behest of an applicant or the Committee. *See, e.g.,* Mass Gen. Laws Ann. Ch. 49A, § 9 (West 2006) (providing express written waiver of timing requirement for the issuance of special permits); Minn Stat. Ann. § 15.99 (West 2006)(allowing for an extension of time periods for agency

the default provision is concerned, we therefore, cannot conclude that the BLUA acted outside the limits of its statutory powers, applied the relevant law incorrectly, made a decision that was not supported by substantial evidence, abused its discretion or acted in an arbitrary or capricious manner when it issued Golden a major costal zone permit by default.

Nonetheless, we are profoundly troubled by the outcome here. The Act was adopted to ensure the "orderly, balanced utilization and conservation of the resources of the coastal zone, taking into account the social and economic needs of the residents of the Virgin Islands[.]" 12 V.I.C. § 903(b)(4); *see also Virgin Islands Conservation Society, Inc.*, 2007 U.S. Dist. LEXIS 91458, at *10-11 (citing *West Indian Co. v. Gov't of the Virgin Islands*, 844 F.2d 1007, 1011 (3d Cir. 1987)). CZM Committees are the technically competent administrative entities tasked with conducting fact-finding and rendering conclusions that ensure that the balance between conservation and economic development is met.[17] Nonetheless, under the current statutory scheme, where the

---

actions); Conn. Gen Stat. § 8-7d (2006)(allowing for sixty-five day extension for similar time periods for the issuance of permits).

[17]

> (2) <u>A permit shall be granted for a development if the appropriate **Committee** of the Commission or the Commissioner,</u>

Committee fails to take timely action on a developer's application, the CZM Act endorses the summary issuance of a coastal zone development permit by default, without Committee review or input.

Put plainly, under the Act's present state, a major coastal zone permit could feasibly be issued by default although the Committee finds that the proposed development would pollute the environment, worsen social conditions and disenfranchise the surrounding community. This result is woefully inconsistent with the spirit and purpose of the CZM Act.[18] In our opinion, the

---

<pre>           whichever is applicable, finds that (A) the development is
           consistent with the basic goals, policies and standards
           provided in sections 903 and 906 of this chapter; and (B) the
           development as finally proposed incorporates <u>to the maximum
           extent feasible mitigation measures to substantially lessen or
           eliminate any and all adverse environmental impacts of the
           development</u>; otherwise the permit application shall be denied.
           The applicant shall have the burden of proof to demonstrate
           compliance with these requirements.
</pre>

12 V.I.C. § 910 (emphasis added).

[18]

<pre>     (2) A permit shall be granted for a development if the
     appropriate Committee of the Commission or the Commissioner,
     whichever is applicable, finds that (A) the development is
     consistent with the basic goals, policies and standards
     provided in sections 903 and 906 of this chapter; and (B)
     the development as finally proposed incorporates to the
     maximum extent feasible mitigation measures to substantially
     lessen or eliminate any and all adverse environmental
     impacts of the development; otherwise the permit application
     shall be denied. The applicant shall have the burden of
     proof to demonstrate compliance with these requirements. . .
     .
</pre>

permit by default provision at 12 V.I.C. § 910(d)(4)(2004), without more, is a glaring statutory flaw that is amplified by the issue at bar. In sum, as we underscored when we first addressed this appeal, the permit by default clause creates the potential for the abdication of the CZM's role.[19] That potential was realized here.[20] We cannot highlight or reiterate this enough.[21]

---

12 V.I.C. § 910(a)(2).

[19]

> The VICZMA and its implementing regulations clearly mandate the approval of an application when the Committee fails to act on an application within thirty days of the public hearing. However, where the Committee fails to comply and the BLUA issues a permit, the rules which safeguard the proper discharge of the Committee's fact-finding and investigatory duties are insufficient at best. If the drawn-out appellate proceedings in this case demonstrate nothing else, it is the urgency for a clarification of the Coastal Zone Management Act by the Virgin Islands Legislature. We join courts before us in recommending appropriate modifications to the VICZMA so that neither individual litigants nor government agencies are left to flounder in the sea of uncertainties generated by the statute's imprecision.

*Virgin Islands Conservation Society, Inc.*, 2007 U.S. Dist. LEXIS 91458, at *32-33 (internal quotations and citations omitted). The default provision authorizes permit issuance for major developments, without substantive or procedural safeguards, at the Committee level, to ensure that the balance between conservation and development is properly protected and sufficiently maintained.

[20] Indeed, where a permit is issued by default as a result of the Committee's inability to act on an application, the Act is silent as to whether a proposed development is required to meet any of the Committee's proposed recommendations concerning environmental, social or economic impact standards prior to being issued.

[21] As the Superior Court aptly noted, "the grant of the permit by operation of law was the penalty for the Commission's inability to reach a decision within the statutorily mandated time period." *See Virgin Islands*

Nonetheless, it is a time-honored, central and fundamental tenet of our jurisprudence that the role of the judiciary is limited to "say[ing] what the law is."[22] As loathe as we are to endorse a permit that the CZM Committee recommended be denied, we are firmly bound by the explicit and unambiguous letter of the law.[23]

The CZM Act as it stands, clearly mandates that a permit application must be approved by default where the Committee fails to act on an application within thirty days of the conclusion of a public hearing.[24] In this instance, the public hearing concluded

---

*Conservation Society v. Board of Land Use Appeals,* Super. Ct. Civ. Docket No. 83/2005. We are concerned, however, that this penalty is levied wholly against the public. Such a penalty, without counterweight, improperly tilts the delicate balance between preservation and development.

[22] "It is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison,* 5 U.S. 137, 177 (1803)(emphasis added).

[23] It is axiomatic that it is the role of the Legislature to make the laws and the role of administrative agencies to promulgate rules and regulations under the authority delegated to it by the Legislature.

[24] It is the cardinal canon of statutory interpretation that a court must begin with the statutory language. *In re Phila. Newspapers, LLC,* 599 F.3d 298, 304 (3d Cir. 2010). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Id.* "When the words of a statute are unambiguous, then this first canon is also the last: judicial inquiry is complete." *Id.* (citing *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253-54 (1992)(internal citations and quotations omitted); *see also Price v. Del. State Police Fed. Credit Union,* 370 F.3d 362, 368 (3d Cir. 2004) ("We are to begin with the text of a provision and, if its meaning is clear, end there."); *see also In re Infant Sherman,* 2008 V.I. Supreme LEXIS 16 (2008)(courts must presume that a legislature says in a statute what it means and means in a statute what it says there).

on January 28, 2004. The Committee did not meet to address Golden's application until March 26, 2004. Because the CZM Act contains no saving provision that ensures that its overarching goals are protected at the Committee level, we like the Superior Court, are compelled to affirm the issuance of Golden's permit by default because the agents of the CZM Committee failed to act in time.

Our affirmation of the permit's issuance notwithstanding, we note that the Committee is not without recourse to protect the public's interest and, more pointedly, to ensure compliance with the goals of the CZM Act. Indeed, the United States Supreme Court has frequently articulated, that the "great principle of public policy, applicable to all governments alike, [. . . ] forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided." *United States v. Nashville, C. & St. L.R. Co.*, 118 U.S. 120, 125 (1886); *see also Guaranty Trust Co. v. United States,* 304 U.S. 126 (1938); *Stanley v. Schwalby*, 147 U.S. 508, 515 (1893). The High Court has explained that,

> We would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake.

> When, as here, there are less drastic remedies available for failure to meet a statutory deadline, courts should not assume that [the Legislature] intended the agency to lose its power to act.

*Brock v. Pierce County*, 476 U.S. 253, 260 (1986). Although the CZM Act clearly requires that a permit must issue when the agency fails to act, it also specifically tasks the Committee with imposing terms and conditions on "any" permit. *See* 12 V.I.C. § 910(a)(3).[25] The CZM Act at 12 V.I.C. § 910(a)(2) further provides that environmental impact mitigation measures should be incorporated to the "maximum extent feasible."[26]

The Committee carries out the Act's fact-finding directives, and possesses the technical expertise to examine the adverse

---

[25]

> <u>Any</u> coastal zone permit that is issued <u>shall be subject to</u> **terms and conditions** imposed by the appropriate **Committee** of the Commission or the Commissioner, whichever is applicable, in order to ensure that such development will be in accordance with the provisions of this chapter. . . .

12 V.I.C. § 910(a)(3)(emphasis added).

[26]

> A permit shall be granted for a development <u>if</u> the appropriate **Committee** of the Commission or the Commissioner, whichever is applicable, finds that (A) the development is consistent with the basic goals, policies and standards provided in sections 903 and 906 of this chapter; and (B) the development <u>as finally proposed incorporates **to the maximum extent feasible** mitigation measures to substantially lessen or eliminate any and all adverse environmental impacts of the development</u>; otherwise the permit application shall be denied. The applicant shall have the burden of proof to demonstrate compliance with these requirements.

12 V.I.C. § 910(a)(2)(emphasis added).

environmental impacts and corresponding mitigation measures that proposed developments present. Here, however, neither the Committee nor the Commissioner imposed conditions. Where neither the Committee nor the Commissioner has had occasion to impose substantive conditions on Golden's permit, the mitigation measures called for by the CZM Act have not been imposed to the "maximum extent feasible" and concomitantly, the requirements of the Act remain unfulfilled.[27] *See* 12 V.T.C. § 910(a)(2).

While we acknowledge that 12 V.I.C. § 914(d) empowered the BLUA to impose conditions on the default permit, nothing in the CZM Act precludes the Committee from subsequently imposing conditions and recommendations on a CZM permit issued by default. *See, e.g., Cyberworld Enter. Techs., Inc. v. Napolitano*, 602 F.3d 189, 196 (3d Cir. 2010)(unless a statutory time-line explicitly divests the administrative agency from the power to act, Courts may conclude that the agency may impose conditions when a permit is issued by default); *see also Manasota-88, Inc. v. Agrico Chemical Co.*, 576 So. 2d 781, 783 (Fla. App. 2d Dist. 1991)(where substantive regulatory law does not preclude agency from imposing

---

[27] We recognize that after the permit had been issued by default, the BLUA placed several conditions on the permit in order to achieve the objectives of the Act. However, the CZM Act makes clear that this task is best left for the fact-finding CZM Committee, in the first instance, whose charge it is, with "boots on the ground" to harmonize the goals of economic development and ecological preservation by defining the parameters with which pertinent coastal and wetland developments must advance.

conditions on a permit issued by default, agency may impose mitigative measures).

Because the CZM Act directs the CZM Committee, in the first instance and within its field of expertise, to advance the goal of preserving coastal resources while simultaneously advancing economic development[28], the Committee may determine whether imposing revised and/or additional conditions on Golden's permit is necessary for CZM Act compliance. Of course, that decision is best left for the CZM Committee and the BLUA.

## V. CONCLUSION

For the reasons cited above, we **AFFIRM**. An order consistent with this opinion follows.

---

[28] *See V.I. Conservation Society v. Board of Land Use Appeals*, 30 V.I. 191, 199 (D.V.I. 1994).