**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-1982

_____

VIRGIN ISLANDS CONSERVATION SOCIETY, INC.,
Appellant

v.

VIRGIN ISLANDS BOARD OF LAND USE APPEALS

GOLDEN RESORTS LLLP

_____

On Appeal from the District Court
of the Virgin Islands
(D.C. No. 1-06-cv-00089)
Chief Judge: Honorable Curtis V. Gómez[1]
District Judge: Honorable Juan R. Sánchez
Superior Court Judge: Honorable Michael C. Dunston

Argued: December 9, 2020

_____

[1]    At the time this appeal was considered, Judge Curtis V. Gómez was the Chief Judge of the District Court of the Virgin Islands. This case has since been reassigned to Judge Wilma A. Lewis. App. Div. Dkt. ECF No. 76.

Before:  SMITH, <u>Chief Judge</u>, CHAGARES and MATEY,
<u>Circuit Judges</u>

(Opinion filed: August 23, 2021)

Andrew C. Simpson [ARGUED]
Andrew C. Simpson Law Offices
2191 Church Street, Suite 5
Christiansted, VI 00820

<u>Counsel for Virgin Islands Conservation Society, Inc.</u>

Denise N. George, Attorney General
Pamela R. Tepper, Solicitor General
Ian S.A. Clement, Assistant Attorney General [ARGUED]
Office of the Attorney General of the Virgin Islands
Department of Justice
34-38 Kronprindsens Gade
GERS Complex, 2nd Floor
St. Thomas, VI 00802

Dionne G. Sinclair
PMB2332
9160 Estate Thomas
St. Thomas, VI 00802

<u>Counsel for Virgin Islands Board of Land Use Appeals</u>

Treston E. Moore [ARGUED]
Moore Dodson & Russell
5035 (14A) Norre Gade
P.O. Box 310, Suite 201

2

St. Thomas, VI 00802

Counsel for Golden Resorts LLLP

_____

OPINION OF THE COURT

_____

CHAGARES, Circuit Judge.

In this long-running dispute, the Virgin Islands Conservation Society, Inc. ("VICS") — an environmental advocacy organization — challenged a default permit that the Virgin Islands Board of Land Use Appeals (the "Board") granted to Golden Resorts LLLP ("Golden"). VICS filed its petition for writ of review in the Superior Court of the Virgin Islands (the "Superior Court"), a territorial court, and eventually appealed the Superior Court's decision to the Appellate Division of the District Court of the Virgin Islands (the "Appellate Division"), another territorial court.

The question that confronts us on appeal is whether a party appealing from the decision of a territorial court must establish Article III standing when invoking our jurisdiction, even though Article III standing is not required before the territorial courts. We hold that the party invoking federal jurisdiction must make this showing. But because the record is insufficient for us to determine whether VICS has Article III standing, we cannot determine our own jurisdiction at this stage. We will consequently remand this case to the Appellate Division with instructions to remand to the Superior Court to supplement the record and certify its findings to this Court. We will retain jurisdiction over this appeal on remand.

3

I.

The complex history of this case began when Golden applied for a development permit to construct a hotel, casino, and other amenities in September 2003. Because Golden's proposed development was located within the first tier of St. Croix's coastal zone, the Virgin Islands required that Golden first receive a major Coastal Zone Management ("CZM") permit, V.I. Code Ann. tit. 12 [hereinafter V.I.C.], § 910(a)(1).

The Virgin Islands Coastal Zone Management Act of 1978, 12 V.I.C. § 901 et seq., governs how these coastal zone permits are issued. Once an applicant submits a completed permit application, one of the three committees of the Coastal Zone Management Commission must hold a public hearing on the application. Id. §§ 904(a), 904(b), 910(d)(2). The committee has thirty days after this public hearing to "act upon" the application. Id. § 910(d)(4). Its failure to do so "shall be deemed an approval" of the permit application. Id.

The St. Croix Committee of the Coastal Zone Management Commission (the "CZM Committee") held the statutorily required public hearing on Golden's application on January 8, 2004. VICS appeared at this hearing and submitted written comments. At the hearing, Golden noted that it needed additional time to respond to the public's comments on its application. The CZM Committee indicated that the thirty-day statutory deadline could be extended. On January 20, 2004, Golden wrote to the CZM Committee to ask that it "grant [Golden] an extension of the decision date mandated by [12 V.I.C. § 910(d)(4)] in order to allow Golden Resorts to prepare and submit a comprehensive response to the [submitted]

4

comments." Appendix ("App.") 764. Golden suggested that it complete its response by February 6, 2004 — the day before the thirty-day statutory deadline expired — and that the CZM Committee hold a decisional meeting on February 13, 2004 — six days after the statutory deadline passed.

This letter led to a series of correspondences in which Golden and the CZM Committee argued about whether Golden had waived the benefit of the statutory deadline for the CZM Committee to act. On February 6 — the day Golden had suggested it complete its responses — the CZM Committee responded that it had received Golden's January 20 letter and construed the letter as "waiv[ing] [Golden's] right to a decision concerning [the permit application], within 30 days after conclusion of the public hearing held on January 8, 2004." App. 765. Golden replied three days later, asserting that its January 20 letter "did not constitute a general waiver" of the thirty-day deadline and was instead "an extension of that period to and until February 13, 2004." App. 797. By the time Golden replied, the thirty-day statutory period had elapsed on February 7, 2004. The CZM Committee responded one final time on February 13 to explain that it still interpreted Golden's January 20 letter as a waiver.

The CZM Committee had difficulty meeting its quorum requirements and held the decisional meeting on May 26, 2004 — over three months after the statutory deadline expired. Despite its letters asserting that Golden had waived the thirty-day deadline, the CZM Committee concluded at the meeting that its failure to act on the permit before the statutory deadline meant that it had granted Golden a permit by default. The CZM Committee, however, later rescinded the default permit and set a new decisional meeting for August 2004.

Golden appealed the rescission to the Board, which stayed the CZM Committee's August decisional meeting pending resolution of the appeal. The CZM Committee chose to hold the August decisional meeting anyway and voted to require that Golden submit additional information about its permit application or else its application would be deemed withdrawn. Golden appealed again to the Board, which consolidated the two appeals. The Board subsequently issued the default permit to Golden.

VICS filed a petition for writ of review with the Superior Court in February 2005, challenging the default permit and arguing, inter alia, that Golden's application did not meet the requirements of the CZM Act. The court allowed Golden to intervene. In May 2006, the court affirmed the Board's decision to grant the default permit after concluding that the Board acted within its statutory powers and that the Board's findings were supported by substantial evidence.

VICS appealed to the Appellate Division. In December 2007, the Appellate Division concluded that Golden did not waive the CZM Committee's statutory deadline. The Appellate Division noted, however, that the administrative record was incomplete and that it could not resolve VICS's challenge to the conditions of the default permit or determine whether Golden's permit application was sufficient because the CZM Committee had not made factual findings about these terms and conditions, Golden's application, or its Environmental Assessment Report. Because of this incomplete record, the Appellate Division remanded to the

Superior Court (the "2008 remand")[2] with instructions to remand the case to the CZM Committee in turn "for further factual consideration." App. 61.

To complete the record on remand, the CZM Committee adopted its staff report from May 2004, which had concluded that Golden's application did not meet several of the CZM Act's requirements. The CZM Committee submitted these findings to the Superior Court in February 2010. VICS filed these findings with the Appellate Division that same month. The Superior Court issued an order a year later remanding the case again to the CZM Committee, but this time to decide the merits of VICS's petition (the "2011 remand"). <u>V.I. Conservation Soc'y v. V.I. Bd. of Land Use Appeals</u>, No. SX-05-cv-83, 2011 WL 12663486, at *4 (V.I. Super. Ct. Feb. 14, 2011). The court reasoned that the Appellate Division in its 2008 remand had explained that courts should not substitute their judgment for the agency's judgment and consequently concluded that the CZM Committee should decide in the first instance the merits of VICS's challenge to Golden's application. <u>Id.</u>

VICS subsequently sought a writ of mandamus from the Appellate Division "to compel compliance with the [2008] remand order" on the ground that the Appellate Division's 2008 remand required only that the CZM Committee issue its findings of fact and that the "appropriate appellate court [] review the findings of fact," not that the case be remanded to

---

[2] Although the Appellate Division issued its decision on December 6, 2007, it did not issue the accompanying order until February 1, 2008.

the CZM Committee on the merits. App. Div. Dkt. ECF No. 55 at 1–3. The Appellate Division did not rule on this petition.

The Superior Court issued an order in November 2013 requiring that its 2011 remand order be served on both the CZM Committee and the Board. Approximately eight months later, the Superior Court issued another order, noting that it was still unclear whether the CZM Committee and Board had received the 2011 remand order. The court again ordered that the 2011 remand order be served on the CZM Committee and that the CZM Committee comply with that order within ninety days. The CZM Committee filed its analysis on the merits of VICS's petition for writ of review with the Superior Court in November 2014. The Superior Court has not issued any subsequent opinions or orders related to its 2011 remand order.

Although the CZM Committee submitted its findings of fact in February 2010, the Appellate Division did not issue its decision until over a decade later. On April 9, 2020, the court affirmed the Superior Court's 2006 decision that affirmed the Board's grant of a default permit to Golden. The court noted that its "fact-finding record-remand order [had] been fulfilled." App. 18. Even though the Appellate Division had remanded the case for the CZM Committee to supplement the record so that the court could consider the merits of VICS's petition, the court did not consider the CZM Committee's factual findings. It instead affirmed the Superior Court's 2006 decision on the ground that the CZM Committee's failure to act before the thirty-day statutory deadline passed meant that Golden was entitled to a default permit. The court did not reach the merits of VICS's petition but noted that "nothing in the CZM Act precludes the Committee from subsequently imposing conditions and recommendations on a CZM permit issued by

default." App. 29. The Appellate Division also did not discuss the Superior Court's 2011 remand order. VICS timely appealed from the Appellate Division's decision.[3]

---

[3]     While this case was on appeal before this Court, the Superior Court issued an order on February 4, 2021, in which it described Golden's acquisition by non-party Jericho All Weather Opportunity Fund, LP ("Jericho"). ECF No. 58 at 6. We asked the parties to submit supplemental briefing regarding whether this case is moot and to clarify which entity owns the land and permit at issue. We take judicial notice of the Office of the Virgin Islands Marshal's Certificate of Sale, Jericho All-Weather Opportunity Fund, L.P. v. Golden Resorts, LLLP, No. SX-10-cv-295 (Super. Ct. Aug. 26, 2016), which describes how Jericho now owns Golden and Golden's permit. Golden contends that it may validly transfer its permit to Jericho under the applicable Virgin Islands regulations within a year of a final decision in this matter because of an extension the Board granted it in 2008. Golden Second Supp. Br. 3. VICS contends that the Board lacked the power to issue this extension. VICS Second Supp. Opp. Br. 5 n.4. The parties' dispute about the validity of the extension — and, necessarily, whether and when Golden may transfer its permit — is pending in the Virgin Islands Supreme Court, which stayed the proceedings pending the final resolution of this appeal. VICS Br. 2. Jericho now owns the relevant land, so if Golden did not validly transfer its permit, then no entity would be able to develop the land pursuant to the permit, and the case would arguably be moot. Because the parties' disputes are still ongoing and there has not been a final determination with respect to the validity of the permit's extension and whether a subsequent transfer is appropriate, we conclude that this case is not moot. See United Steel Workers Int'l Union v. Gov't of V.I., 842 F.3d 201, 208

II.

Before we review the merits of an appeal, we must determine whether we have jurisdiction. See Hamer v. Neighborhood Hous. Servs. of Chi., 138 S. Ct. 13, 17 (2017) ("[C]ourts are obliged to notice jurisdictional issues and raise them on their own initiative."). We raised sua sponte whether the Appellate Division's 2008 remand was a record or case remand and whether VICS must show constitutional standing before this Court. We hold that the Appellate Division's 2008 remand was a record remand and that VICS must show Article III standing, even though this case originated in the territorial courts. Because the record is unclear with respect to whether VICS has Article III standing, we will issue a record remand of our own so that the Superior Court may make factual findings with respect to VICS's standing.

A.

Because many of the complexities in this case arise from the history and structure of the Virgin Islands court system, we briefly discuss the details that are relevant to this case. See, e.g., Defoe v. Phillip, 702 F.3d 735, 738–40 (3d Cir. 2012) (describing the Virgin Islands court system). The Virgin Islands has two trial courts: the District Court and the Superior Court of the Virgin Islands. The District Court is an Article IV court that has "the jurisdiction of a District Court of the United States." 48 U.S.C. § 1612(a). We hear appeals from the District Court. See 28 U.S.C. § 1291.

_____

(3d Cir. 2016) ("A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." (citation and quotation marks omitted)).

The Superior Court has original jurisdiction over, <u>inter alia</u>, civil matters involving Virgin Islands law. 4 V.I.C. § 76(a) ("[T]he Superior Court shall have original jurisdiction in all civil actions . . . ."). Until recently, the Appellate Division of the District Court heard appeals from the Superior Court. <u>See</u> 48 U.S.C. § 1613a(a). Our Court in turn has appellate jurisdiction over appeals from the Appellate Division. <u>Id.</u> § 1613a(c); <u>Virgin Islands v. John</u>, 654 F.3d 412, 416 (3d Cir. 2011).

This system of appellate review changed in the 2000s when the Virgin Islands Legislature established the Supreme Court of the Virgin Islands. The Virgin Islands Supreme Court assumed jurisdiction over all subsequent appeals from the Superior Court, 48 U.S.C. § 1613a(d), so the Appellate Division no longer has appellate jurisdiction over the Superior Court's decisions. <u>Defoe</u>, 702 F.3d at 739. But the Appellate Division retained jurisdiction over all appeals that were pending before it when the Supreme Court of the Virgin Islands was established. 48 U.S.C. § 1613a(d). We continue to hear appeals from those decisions. <u>Id.</u> Once the last case pending on the Appellate Division's docket is resolved, the Appellate Division will no longer exist. <u>John</u>, 654 F.3d at 416 n.1.

## B.

Before we address whether VICS has Article III standing, we will briefly address whether the Appellate Division had jurisdiction to consider this matter after it initially remanded the case to the Superior Court in 2008, because if the Appellate Division lacked jurisdiction, we necessarily lack jurisdiction as well. 48 U.S.C. § 1613a(c); <u>see</u> <u>Storino v.</u>

Borough of Point Pleasant Beach, 322 F.3d 293, 296 (3d Cir. 2003) (noting that courts must ensure that they and the courts from which the record came have jurisdiction); see also Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 431 (2007) ("[A] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" (quoting Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 585 (1999))). Because we conclude that the Appellate Division's 2008 remand was a record remand, we hold that the Appellate Division had jurisdiction to issue its 2020 decision.

It is "a common practice among [appellate courts] to retain jurisdiction over an appeal while making a limited remand for additional findings or explanations." In re Lipitor Antitrust Litig., 855 F.3d 126, 151 (3d Cir. 2017). This practice takes on greater significance in the Virgin Islands because the Appellate Division cannot exercise jurisdiction over matters that were not "pending" before it when the Supreme Court of the Virgin Islands was created. 48 U.S.C. § 1613a(d). This matter was undoubtedly pending before the Appellate Division when the Virgin Islands Supreme Court began exercising its judicial authority on January 29, 2007, because VICS first lodged its appeal with the Appellate Division in June 2006. See Defoe, 702 F.3d at 738.

However, whether this matter remained pending before the Appellate Division after its 2008 remand depends on whether the Appellate Division issued a case or a record remand. The Supreme Court of the Virgin Islands has defined case and record remands as follows:

> In a record remand, an appellate
> court retains jurisdiction over the

case, i.e., jurisdiction over the case remains with the court, but the record is returned to the trial court. In those circumstances, the trial court may be directed to clarify or amplify some portion of the record, to make additional findings, to hear further testimony, or to explain a ruling. The point of such a remand is to give the trial judge the opportunity to complete or clarify the record so that this court will have an adequate basis for review of the trial court's rulings. The trial court does not, however, have the authority to amend the ruling that is on appeal. A "case" remand, on the other hand, returns the case to the trial court for all purposes. The appellate court retains no jurisdiction over the case and the appeal is terminated. If, after a case remand, a party is dissatisfied with the action of the trial court, the only course available to obtain review in the appellate court, is to file a new notice of appeal, once a final order or judgment is entered. That appeal is a new appeal, separate from the previous appeal that was terminated when the case was remanded.

*Hypolite v. People of V.I.*, 51 V.I. 97, 102–03 (V.I. 2009) (per curiam) (quoting *Hodge v. McGowan*, 50 V.I. 296, 304 n.4 (V.I. 2008) (per curiam)) (brackets omitted).  In other words, when the Appellate Division issues a record remand, the Appellate Division retains jurisdiction over the appeal so that the matter remains pending before it.  *See id.* at 103.  If, however, the Appellate Division issues a case remand, the Appellate Division relinquishes jurisdiction over the appeal, meaning that the matter is no longer pending before it and the Supreme Court of the Virgin Islands has jurisdiction over any subsequent appeals in the matter.  *See id.* at 103–04.

The Appellate Division's 2008 remand order and accompanying opinion did not explicitly specify whether it was issuing a case or a record remand.  As the Superior Court noted, the Appellate Division's explanation that it "cannot and should not attempt to substitute [its] judgment for that of the agency" and that its "role as a reviewing court[] is to determine whether the agency has correctly discharge[d] its duties" suggests that the court issued a case remand to allow the CZM Committee to consider the merits of VICS's objections in the first instance.  *See* App. 53 n.21.  Throughout the rest of the opinion, however, the Appellate Division emphasized how it could not determine whether the terms and conditions of the permit were proper "[a]s a consequence of the absence of factual findings regarding these issues."  App. 58; *see also* App. 56 ("[W]e cannot address [VICS's challenge to the permit] at this juncture because the record below is incomplete."); App. 57 ("[W]ithout a complete administrative record, our review is improper."); App. 60 ("[The Superior Court] should have remanded the matter for further factual consideration."); App. 61 ("[W]e shall remand this matter to the Superior Court, with instructions to remand this matter to

the appropriate CZMA Committee for further factual consideration."). Because the Appellate Division's language indicates that it intended to remand for the limited purpose of allowing the Committee to make factual findings, we conclude that its 2008 remand was a record remand. Indeed, the Appellate Division in its 2020 decision referred to its earlier remand as a "fact-finding record-remand order." App. 18.

Although the Appellate Division issuing a mandate and closing the case can sometimes indicate that the remand is a case remand, Hodge v. Bluebeard's Castle, Inc., 62 V.I. 671, 684 (V.I. 2015), that the Superior Court received the mandate after the 2008 remand in this case, ECF No. 58 at 8 n.1, does not change our conclusion. When an appellate court issues a remand, the trial court "must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." Bankers Tr. v. Bethlehem Steel Corp., 761 F.2d 943, 949 (3d Cir. 1985). If the mandate provides that the trial court "shall proceed in accordance with the opinion of the reviewing court," this language "make[s] the opinion a part of the mandate as completely as though the opinion had been set out at length." Id. (quoting Noel v. United Aircraft Corp., 359 F.2d 671, 674 (3d Cir. 1966)). The Appellate Division's mandate contained certified copies of the Appellate Division's 2008 remand order and opinion and provided that it included the order and opinion "in a formal mandate." App. Div. Dkt. ECF No. 39. But the Appellate Division did not close this case, and the 2008 remand order itself provided that the matter was remanded "for further consideration, consistent with the Memorandum Opinion filed in this matter." App. 32. Because the mandate incorporated the Appellate Division's opinion that provided for a record remand, the fact that the Appellate Division issued the mandate

does not convert the Appellate Division's record remand into a case remand.

Because the Appellate Division issued a record remand, it retained jurisdiction over this case while on remand and the case remained pending before the court. See Hypolite, 51 V.I. at 103–04. Only the record, not the entire case, returned to the Superior Court on remand, id. at 102, so the Superior Court exceeded the scope of this limited remand when it decided to remand the case a second time to the CZM Committee on the merits of VICS's petition. We consequently conclude that the Appellate Division had jurisdiction to consider and issue its April 2020 decision.

## C.

We next turn to the question of our own Article III jurisdiction. Whether we have jurisdiction to hear this appeal depends not only on whether the Appellate Division had jurisdiction, but also on whether VICS must establish Article III standing in this Court, even though we hear this case on appeal from the non-Article III courts of the Virgin Islands. We consider first the standing requirements in front of the Appellate Division before addressing the standing requirements of this Court. We hold that VICS must establish Article III standing on appeal to this Court but that the record is incomplete with respect to VICS's alleged injury-in-fact. We will consequently retain jurisdiction over this appeal and issue a limited record remand for the Superior Court to make factual findings with respect to VICS's alleged injury.

### 1.

As a court of the Virgin Islands, the Appellate Division is a "non-Article III court" and is not bound by Article III requirements. In re Richards, 213 F.3d 773, 780 (3d Cir. 2000). Even though it was "established by federal law, the Appellate Division exercises 'such appellate jurisdiction over the courts of the Virgin Islands established by local law [i.e., the Territorial Court] to the extent now or hereafter prescribed by local law.'" Gov't of V.I. v. Hodge, 359 F.3d 312, 316 (3d Cir. 2004) (quoting 48 U.S.C. § 1613a(a)). The Virgin Islands Legislature consequently decides "who can appeal to the Appellate Division, and when they can appeal." Id. Because local law establishes the Appellate Division's jurisdiction and because the Appellate Division is not an Article III court, Article III standing is not required for appeals to that court. As long as Virgin Islands law permits VICS to bring suit in the territorial courts, VICS had standing to appear before the Superior Court and the Appellate Division.

The Virgin Islands Code provides that "a petition for writ [of] review may be filed in the [Superior Court of the Virgin Islands][4] in the case of any person aggrieved by the

---

[4] Although § 913(d) provides that petitions should be filed in the "District Court of the United States Virgin Islands," the Supreme Court of the Virgin Islands has explained that "the reference to 'the district court' in section 913(d) — like all references to the District Court in the Virgin Islands Code enacted before the Legislature adopted 4 V.I.C. § 76 — has been implicitly repealed." Stewart v. V.I. Bd. of Land Use Appeals, 66 V.I. 522, 529 n.6 (V.I. 2017) (quoting Kalloo v. Estate of Small, 62 V.I. 571, 578 n.3 (V.I. 2015)) (brackets omitted). VICS's decision to file its petition for writ of review in the Superior Court was consequently proper. See Bryan v.

granting or denial of an application for a coastal zone permit." 12 V.I.C. § 913(d). The Code defines an "aggrieved person" as "any person . . . who, in connection with a decision or action of the [Committee] on an application for a major coastal zone permit either appeared in person or through representatives at a public hearing of the [Committee] on said application, or prior to said decision or action informed the [Committee] in writing of the nature of his concern." Id. § 902(a).

VICS is clearly an "aggrieved person" within the meaning of this statute. VICS not only appeared at the Committee's public hearing in January 2004, but also submitted written comments expressing its concerns about Golden's permit application. Section 913(d) consequently authorized VICS to file its petition for writ of review in the Superior Court and to appeal the Superior Court's decision to the Appellate Division.

### 2.

Having concluded that standing under territorial law is sufficient to appear before the Appellate Division, we turn next to whether a party appealing to this Court from the decision of a territorial court must show Article III standing and not merely standing under territorial law. We hold that the party invoking federal jurisdiction must establish that Article III's standing requirements have been met.

---

Ponce, 51 V.I. 239, 247 n.5 (V.I. 2009) (per curiam) (reproducing § 913(d) but replacing "District Court" with "[Superior] Court").

Article III "limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies,' and 'Article III standing . . . enforces the Constitution's case-or-controversy requirement.'" Hein v. Freedom From Religion Found., Inc., 551 U.S. 587, 597–98 (2007) (quoting DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006)). The party invoking federal jurisdiction must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). To meet the injury-in-fact requirement, the party must show that it has "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." Id. at 1548 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)) (quotation marks omitted). The deprivation of a procedural right can create Article III standing in some instances, but the party must have been granted the procedural right to protect a concrete interest and that "concrete interest [must have been] affected by the deprivation." Summers v. Earth Island Inst., 555 U.S. 488, 496 (2009).

VICS asserts that this Court sits as an Article IV court when reviewing decisions from the Virgin Islands, so standing under territorial law alone is sufficient. But our reviewing a decision from a territorial court does not change the fact that we exercise the "judicial Power of the United States," U.S. Const. art. III, § 1, and are accordingly "a court of limited jurisdiction," Ortiz v. Dodge, 126 F.3d 545, 547 (3d Cir. 1997) (reviewing a decision of the Appellate Division). It is well established that "Congress may not expand the jurisdiction of the federal courts beyond the bounds established by the

Constitution." <u>Verlinden B.V. v. Cent. Bank of Nigeria</u>, 461 U.S. 480, 491 (1983). Accordingly, "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." <u>Spokeo</u>, 136 S. Ct. at 1547–48 (quoting <u>Raines v. Byrd</u>, 521 U.S. 811, 820 n.3 (1997)); <u>see also</u> <u>TransUnion LLC v. Ramirez</u>, 141 S. Ct. 2190, 2205 (2021) ("[E]ven though Congress may elevate harms that exist in the real world before Congress recognized them to actionable legal status, it may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." (quoting <u>Hagy v. Demers & Adams</u>, 882 F.3d 616, 622 (6th Cir. 2018)) (quotation marks omitted)); <u>Summers</u>, 555 U.S. at 497 ("[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute."). Because Article III establishes the immovable bounds of our jurisdiction, we hold that a party appealing from the decision of a territorial court must establish Article III standing when invoking our jurisdiction.

The plaintiff, "as the party invoking federal jurisdiction, bears the burden of establishing [the Article III standing] elements." <u>Spokeo</u>, 136 S. Ct. at 1547. Where, as here, the case originated in a state or territorial court in which Article III standing requirements do not apply, the party appealing to or seeking a writ of certiorari from a federal court must establish that there is Article III standing before the federal court may hear the appeal. <u>Cf.</u> <u>ASARCO Inc. v. Kadish</u>, 490 U.S. 605, 618 (1989). This requirement is easily met where the plaintiff would have had Article III standing to commence the suit in federal court from the outset. <u>See</u> <u>id.</u> at 617–18.

But what if the plaintiff would not have had Article III standing to file suit in federal court from the beginning? In other words, if local law does not require the plaintiff to show an injury-in-fact and the plaintiff cannot show an injury-in-fact at the time of the state- or territorial-court proceedings, how can the appealing party make this showing on appeal? The Supreme Court answered this question in ASARCO. There, the plaintiff-respondents — individual taxpayers and the Arizona Educational Association — sought a declaration in Arizona state court that a state statute governing mineral leases was void. Because state courts are not bound by Article III's requirements, the Arizona courts heard the case, even though the plaintiff-respondents lacked Article III standing, and the plaintiff-respondents ultimately prevailed before the Arizona Supreme Court. Id. at 610, 612. The defendant-petitioners — all present and future mineral lessees of state lands — filed a petition for certiorari. The Supreme Court concluded that the defendant-petitioners had standing when they invoked the Court's jurisdiction because the state-court decision "pose[d] a serious and immediate threat to the continuing validity of [the defendant-petitioners'] leases." Id. at 618. Because the state-court decision adversely adjudicated the defendant-petitioners' legal rights, the court's adjudication itself injured the defendant-petitioners such that that they had constitutional standing. Id. In reaching this decision, the Court emphasized that the state-court judgment had "alter[ed] tangible legal rights." Id. at 619. In other words, losing before a state or territorial court does not establish an injury-in-fact by itself. The state or territorial court's adverse judgment must "cause[] direct, specific, and concrete injury" to the party who seeks to invoke federal jurisdiction, "where the requisites of a case or controversy are also met." Id. at 623–24; see also IPSCO Steel (Ala.) Inc. v. Blaine Constr. Corp., 371 F.3d 150, 154 (3d Cir.

2004) (noting in its statutory standing discussion that "a party who does not intervene in the district court (or did not have Article III standing to pursue the original action) may nevertheless have standing to pursue an appeal if it can show that it was adversely affected by the judgment").

The Court of Appeals for the Ninth Circuit reached the same conclusion in an appeal from the Guam Supreme Court. In Gutierrez v. Pangelinan, 276 F.3d 539 (9th Cir. 2002), the plaintiff-respondents relied on taxpayer standing to file suit in the Guam territorial courts, alleging that the Governor of Guam's failure to sign a bill meant that he had pocket vetoed it under the Guam Legislature's procedural rules and local law. Id. at 543–44.  Meanwhile, the Governor argued that local law allowed him to pass bills into law without signing them.  Id. at 546.  The Supreme Court of Guam agreed with the plaintiff-respondents, and the defendant-petitioners — including the Governor — petitioned for writ of certiorari from the Court of Appeals for the Ninth Circuit.  Id. at 544.  The court concluded that, even though the plaintiff-respondents lacked Article III standing, the defendant-petitioners had constitutional standing to invoke federal jurisdiction because the Guam Supreme Court's decision caused a direct, specific, and concrete injury to the Governor by nullifying his right to allow bills to pass into law without his signature.  Id. at 545–46.

Unlike the defendant-petitioners in ASARCO and Gutierrez, VICS cannot show that the Appellate Division's decision adversely adjudicated its legal rights for the same reason that it cannot establish Article III standing in the traditional sense — the record is entirely devoid of information about VICS's interest or legal rights.  VICS concedes as much. VICS First Supp. Br. 16.  Without any information about what

VICS's interest in this case is or how its legal rights are at stake, we can determine neither whether the Board's decision to grant Golden the default permit injured VICS such that it had Article III standing in the traditional sense and could have filed suit in federal court from the beginning, nor whether the Appellate Division's decision affirming the granting of the permit injured VICS such that it can establish standing as provided in ASARCO. We recognize that the Superior Court and the Appellate Division, as territorial courts, had no reason to consider whether VICS suffered an injury-in-fact. But the incomplete record renders it impossible for us to determine whether Golden's default permit injured VICS and whether we thus have jurisdiction.

VICS contends that its loss before the Appellate Division constitutes an injury-in-fact because the court did not review the merits of VICS's objections to Golden's permit. We are not convinced. VICS is correct that "aggrieved persons" have the right to appeal the granting of a permit to the Board and to seek a writ of review from the Superior Court. 12 V.I.C. §§ 913(d) (aggrieved persons may file a petition for writ of review in the Superior Court), 914(a) (if the CZM Committee grants or denies a permit application, the aggrieved person may file an appeal with the Board). But Sections 913 and 914 only provide an aggrieved person with procedural rights. And VICS exercised its procedural right as an aggrieved person under § 913 when it filed a petition for writ of review in the Superior Court. Both the Superior Court and Appellate Division's decisions affirming the Board's decision to grant the default permit did not interfere with or impair VICS's right to appeal in any way. Even if VICS had been deprived of this procedural right, its "concrete interest [must have been] affected by the

deprivation" for Article III standing to exist.[5]  Summers, 555 U.S. at 496.  But on this record, we cannot determine what concrete interest VICS has, let alone whether it has been affected by the alleged deprivation of VICS's procedural right.

---

[5]       Chief Judge Smith reads International Primate Protection League v. Administrators of Tulane Educational Fund, 500 U.S. 72 (1991), to establish that the deprivation of a limited class of "procedural" rights can form the basis of Article III standing without the need for that procedural right to protect a concrete interest.  In International Primate, the Court held that regardless of whether the plaintiffs had Article III standing to bring their underlying state-law claims, they had standing to challenge the defendant's removal of their case to federal court because they "lost the right to sue in Louisiana [state] court—the forum of their choice."  Id. at 77.  The deprivation of this "procedural" right — to have a state court adjudicate their claims — was sufficient to confer Article III standing because 1) the improper removal purportedly violated a federal statute, 2) the injury was fairly traceable to the defendant's removal, and 3) the injury was redressable by a decision that removal was improper.  Id.  The International Primate Court never analyzed the "procedural" injury for concreteness.  Indeed, Chief Judge Smith does not see how a Spokeo-TransUnion concreteness inquiry could be applied to procedural rights like the right to proceed in state court sans improper removal.  Assuming the continuing vitality of International Primate in the wake of Spokeo and TransUnion, Chief Judge Smith does not read the Court's holding in International Primate to compel a different result for VICS:  any theoretical deprivation of VICS's procedural rights as an "aggrieved person" under 12 V.I.C. § 913(d) is not fairly traceable to Golden or the Board's challenged actions.

VICS's statutory right under § 913 thus cannot be the basis for Article III standing.

The Supreme Court in ASARCO made clear that a losing party only has standing because of a court's decision if that decision adversely adjudicated the party's legal rights and caused a direct, specific, and concrete injury to the party seeking to invoke federal jurisdiction. 490 U.S. at 623–24. Because of the incomplete record, we cannot resolve this issue at this stage nor determine our own jurisdiction. We will consequently remand this case to the Appellate Division with instructions to remand it to the Superior Court so that the Superior Court can make factual findings regarding VICS's alleged injury and certify its factual findings to this Court. See United States v. Genser, 582 F.2d 292, 311 (3d Cir. 1978) (instructing trial court to certify factual findings to this Court). These factual findings may include: VICS's membership structure; the relationship of VICS's members to the land at issue, which may include the frequency with and purposes for which the members use the land or the "area affected by the challenged activity"; and how and to what extent VICS and its members will be impacted by the CZM permit. See Lujan, 504 U.S. at 563–67, 573 n.8 (requiring environmental organizations and their members to show "through specific facts" that they would be directly affected by the challenged action and explaining that individuals can enforce procedural rights "so long as the procedures in question are designed to protect some threatened concrete interest of [theirs] that is the ultimate basis of [their] standing").

To be clear, we are issuing a limited record remand solely for the purpose of supplementing the incomplete record. In re Lipitor Antitrust Litig., 855 F.3d at 151 ("It is a common

practice among the Courts of Appeals to retain jurisdiction over an appeal while making a limited remand for additional findings or explanations."); Genser, 582 F.2d at 311 (remanding "with instructions to conduct an evidentiary hearing and to certify to this court its findings of fact" (footnote omitted)); see also Biggs v. V.I. Bd. of Land Use Appeals, 884 F.2d 108, 113 (3d Cir. 1989) (remanding for the trial court to make factual findings). We will retain jurisdiction over this appeal while it is on limited remand.[6] See Genser, 582 F.2d at 311; 3d Cir. I.O.P. 7.1 ("When a panel deems it appropriate for this court to retain jurisdiction without disposing of the case and to remand to the district court or agency, . . . the panel may do so and hold the appeal in abeyance.").

III.

We sympathize with the parties' frustration with these decades-long proceedings. But "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Raines, 521 U.S. at 818 (quoting Simon v. E. Ky. Welfare Rts. Org., 426 U.S. 26, 37 (1976)). Because it is unclear whether VICS has Article III standing to pursue its appeal in this Court, we will order a limited record remand in this case to the Appellate Division with instructions to remand to the Superior Court for the limited purposes of supplementing the record with respect to VICS's alleged injury and certifying its findings to this Court

---

[6] Because we must remand this case so that the Superior Court can make factual findings with respect to whether VICS has suffered an injury-in-fact, we need not — and indeed, cannot — reach the merits of VICS's appeal at this stage.

26

in prompt proceedings consistent with this Opinion.  We will retain jurisdiction over this appeal.